(C. D. 1802)

Prime Fur Corp. *v.* United States

United States Customs Court, First Division

(Decided September 5, 1956)

*Barnes, Richardson & Colburn* (*Albert MacC. Barnes, Hadley S. King*, and *Eugene F. Blauvelt* of counsel); and *Strauss & Hedges, Siegel, Mandell & Davidson, John D. Rode, Lane, Young & Fox, Brooks & Brooks*, and *Lane & Wallace*, associate counsel; for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; MOLLISON, J., dissenting

WILSON, Judge: This case has been submitted to the court for decision upon the following stipulation, signed by the respective parties:

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the parties hereto that the merchandise covered by the above enumerated protests consists of fur plates composed of the ears or legs of lamb skins or the heads or legs of kid skins, it being agreed that the plates are composed either of all ears, all legs or all heads and that pieces of lamb skins are not commingled with pieces of kid skins in the same plate.

That the plates consisting of the above enumerated parts of lamb skins were classified for duty under Par. 1519 (b) of the Tariff Act of 1930 at 35 per centum ad valorem, and the plates consisting of the above enumerated parts of kidskins were classified for duty under Par. 1519 (a) of the said Act at 25 per centum ad valorem.

That the plate marked Exhibit 1, accompanying this stipulation, is representative of the lamb ear plates above described and the plate marked Exhibit 2, accompanying this stipulation, is representative of the lamb leg plates above described.

That no kid plates, similar to those above described, are available as Exhibits.

That the articles in question are imported, invoiced, bought and sold and dealt in and known as lamb ear or leg plates or as kid head or leg plates.

That the lamb and kid skins from which the ears, legs or heads were later removed, had been subjected to the processing described in C. D. 1203 and C. D. 1480 as "the China dressing process."

That the chief use of the plates hereinbefore described was for the manufacture of garments but that in their condition as imported they were not usable for such manufacture until they were prepared for such use after importation by a process similar to the process described in C. D. 1203, C. D. 1480, and C. D. 1643, by American dressers and dyers as the process to which the plates therein has been subjected after importation and prior to their manufacture into garments.

That in the manufacture of fur garments or other fur articles, from the plates hereinbefore described, (after the process referred to in the previous paragraph), the pieces of which the plates are composed are not separated from each other.

That, subject to the order of the Court, the plates marked Exhibits 1 and 2 may be received in evidence as Exhibits 1 and 2.

IT IS FURTHER AGREED that the above entitled protests be submitted on this stipulation, and that, subject to the order of the Court, the Plaintiff be granted 30 days from the filing of this stipulation to file a brief and the Defendant be granted 30 days thereafter to reply.

The provisions of the Tariff Act of 1930 pertinent to the decision of the issues in this case are as follows:

Par. 1519. [as amended] (a) Dressed furs and dressed fur skins (except silver or black fox), and plates, mats, linings, strips, and crosses of dressed dog, goat, or kid skins, 25 per centum ad valorem; all the foregoing, if dyed, 30 per centum ad valorem.

(b) Manufactures of fur (except silver or black fox), further advanced than dressing, prepared for use as material (whether or not joined or sewed together) including plates, mats, linings, strips, and crosses (except plates, mats, linings, strips, and crosses of dog, goat, and kid skins), if not dyed, 35 per centum ad valorem; if dyed, 40 per centum ad valorem.

\*          \*          \*          \*          \*          \*          \*

(d) Articles of wearing apparel of every description, wholly or partly manufactured, composed wholly or in chief value of hides or skins of cattle of the bovine species, and not specially provided for, 15 per centum ad valorem; composed wholly or in chief value of dog, goat, or kid skins, and not specially provided for, 35 per centum ad valorem.

(e) Articles, wholly or partly manufactured (including fur collars, fur cuffs, and fur trimmings), wholly or in chief value of fur, not specially provided for, 50 per centum ad valorem.

Par. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Par. 1681. Furs and fur skins, not specially provided for, undressed.

Accepting the recitals in the written stipulation, *supra*, as facts, we are of the opinion that the merchandise in question, as imported, consists of fur plates, undressed, and, accordingly, the following cases of the Court of Customs and Patent Appeals and of this court are controlling of the issues:

*United States* v. *Rotberg & Krieger*, 24 C. C. P. A. (Customs) 441, T. D. 48902.

*United States* v. *Arnhold & Co., Inc., et al.*, 27 C C. P. A. (Customs) 135, C. A. D. 74.

*United States* v. *Winograd Bros., Inc.*, 32 C. C. P. A. (Customs) 153, C. A. D. 302.

*Kung Chen Fur Corp.* v. *United States*, 24 Cust. Ct. 24, C. D. 1203, affirmed in *United States* v. *Kung Chen Fur Corporation*, 38 C. C. P. A. (Customs) 107, C. A. D. 447.

*Kung Chen Fur Corpn.* v. *United States*, 29 Cust. Ct. 266, C. D. 1480.

*A. S. Gold & Bro., Inc.* v. *United States*, 33 Cust. Ct. 120, C. D. 1643.

In the case of *United States* v. *Kung Chen Fur Corporation, supra,* the appellate court affirmed the decision of the United States Customs Court to the effect that the kidskin plates there involved were properly free of duty under paragraph 1681 of the Tariff Act of 1930 as "Furs and fur skins, not specially provided for, undressed," and that the collector was in error in classifying the importation under paragraph 1519 (a) of the said tariff act as "\* \* \* plates \* \* \* of dressed \* \* \* kid skins."

In the case of *A. S. Gold & Bro., Inc., supra*, which was not appealed, the merchandise involved consisted of lambskin plates, treated in the same manner as were the kidskin plates in the *Kung Chen* cases, *supra*. The lambskin plates there involved were classified by the collector under paragraph 1519 (b) of the Tariff Act of 1930 as "Manufactures of fur," further advanced than dressing, prepared for use as material. Following the *Kung Chen* cases, *supra*, the court upheld a protest claiming the plates properly free of duty under paragraph 1681 of the Tariff Act of 1930 as "Furs and fur skins, not specially provided for, undressed."

Under the stipulation, it is agreed that the merchandise at bar "consists of fur plates composed of the ears or legs of lamb skins or the heads or legs of kid skins, it being agreed * * * that pieces of lamb skins are not commingled with pieces of kid skins in the same plate." We, therefore, have before us certain undressed fur plates, some composed of the ears or legs of lambskins, and the others consisting of the heads or legs of kidskins. The only difference, then, between the plates in the instant case and those in the *Kung Chen* and *A. S. Gold* cases, *supra*, is that, in the case at bar, the plates are composed of the skins taken from the legs, heads, and ears, whereas, in the *Kung Chen* and *A. S. Gold* cases, *supra*, the plates were composed of a large number of skins from which the legs, ears, and heads had been removed. However, according to the stipulation, "the lamb and kid skins from which the ears, legs or heads were later removed, had been subjected to the processing described in C. D. 1203 and C. D. 1480 as 'the China dressing process.' "

The next question for determination before us is, then, does the fact that, because the importation now before us consists of fur plates, composed of heads, legs, or ears, removed from the skins after the said skins with the heads, legs, and ears attached had been subjected to the so-called "China dressing process," constitute sufficient reason for classifying the present fur plates under some provision of the tariff act other than paragraph 1681, which has been held to control the classification of kidskin and lambskin plates, such as were involved in the *Kung Chen* and *A. S. Gold* cases, *supra*.

In our opinion, there is no sufficient reason for differentiating between the instant merchandise and that involved in the decided cases, above referred to. Clearly, paragraph 1519 (a) covers only "Dressed furs and dressed fur skins * * * and plates, mats, linings, strips, and crosses of dressed dog, goat, or kid skins," and subdivision (b) of the same paragraph is applicable only to "Manufactures of fur * * * further advanced than dressing, prepared for use as material (whether or not joined or sewed together) including plates * * *."

The merchandise now under consideration must be held to be undressed under the terms of the stipulation and under the authority of the decided cases, *supra*.

In the case of *Kung Chen Fur Corp.* v. *United States*, 24 Cust. Ct. 24, C. D. 1203, the Government sought to establish the following points:

1. That the so-called China processing was a dressing process.

2. That the skins in the imported plates were dressed.

3. That the China process did more than preserve.

4. That the plates were matched up in China, were capable of use, and were actually used in the form of plates in the manufacture of cheaper garments.

5. That if not dutiable under paragraph 1519 (a), they were properly dutiable either under paragraph 1519 (e) as manufactures of fur or under paragraph 1558 of the tariff act as articles manufactured, in whole or in part, not specially provided for.

The first three points have already been disposed of in the *Kung Chen Fur* and *A. S. Gold & Bro., Inc.*, cases, *supra*, all three being decided against the Government. Concerning the latter two claims, *supra*, the court, in the *Kung Chen Fur Corp.* case, C. D. 1203, *supra*, stated:

* * *. The kidskin plates before us likewise have undergone no process of manufacture. They are kidskins sewn together into the form of plates.

We find the imported kidskin plates not to be fur articles, wholly or partly manufactured, and, therefore, not dutiable under paragraph 1519 (e).

The defendant herein futher contends that the imported merchandise is alternatively classifiable under paragraph 1558 of the Tariff Act of 1930 as "* * * articles manufactured, in whole or in part, not specially provided for."

Furs in all conditions are described in paragraph 1519 and paragraph 1681. If the plates in question are furs, they are enumerated, and if enumerated, they cannot fall under paragraph 1558. In the *Winograd Bros.* case, *supra*, our appellate court was of opinion that the provisions of paragraph 1519 (a) for "Dressed furs and dressed fur skins" and those of paragraph 1681 for "Furs and fur skins, not specially provided for, undressed" are more specific than those of paragraph 1558 for "all raw or unmanufactured articles not enumerated or provided for." We are of opinion that the basic issue here involved is whether the kidskins in the plates before us were dressed or undressed, as provided for in paragraph 1519 (a), and that paragraph 1558 of the act has no application here.

We cannot see how the fact that "the pieces of which the plates are composed are not separated from each other" after importation, affects the question of classification, since we must view the merchandise in its condition, as imported.

In the *Kung Chen Fur Corp.* case (C. D. 1203), *supra*, this court, page 32, in holding the involved kidskin plates, which had been

"China dressed" or "China processed," properly free of duty under the provisions of paragraph 1681 of the Tariff Act of 1930 for "Furs and fur skins, not specially provided for, undressed," stated:

While paragraph 1681 provides for "Furs and fur skins, not specially provided for, undressed" and does not refer to "plates" by name, we find these plates to be a number of kidskins sewn together. As the dutiable status of the imported plates depends on whether the individual skins making up the plate are dressed and having concluded that they are not dressed, we hold the imported plates to be free of duty as "* * * fur skins * * * undressed," as claimed, under paragraph 1681, * * *.

On appeal, the judgment of this court in the *Kung Chen Fur Corp.* case (C. D. 1203), *supra*, was affirmed. It would, accordingly, appear that the contention of the defendant in the case at bar that the imported plates cannot be free of duty under paragraph 1681 of the Tariff Act of 1930 as "furs or fur skins" is untenable.

The Government, in its brief, cites the case of *Carlowitz* v. *United States*, 2 Ct. Cust. Appls. 172, T. D. 31681, in support of its contention that the merchandise now before us is clearly distinguishable, for purposes of classification, from the importations involved in the *Kung Chen* and *A. S. Gold & Bro., Inc.*, cases, *supra*. However, in the *A. S. Gold & Bro., Inc.*, case, the same argument was made by the Government, and the Customs Court therein analyzed the *Carlowitz* case, *supra*, in which latter case it was held that the plates under consideration were manufactured articles and that they were not dutiable as "furs dressed on the skin, not advanced further than dyeing * * *," under paragraph 439 of the Tariff Act of 1909, but were dutiable under the same paragraph of the said act as "manufactures of furs, further advanced than dressing and dyeing, when prepared for use as material, including * * * linings and crosses." In the *Gold* case, the court refers to the fact that a similar argument was made in the *Kung Chen Fur Corporation* cases, *supra*, and held to be without merit.

In the *A. S. Gold & Bro., Inc.*, case, *supra*, the court, at page 127, disposed of the argument based on the *Carlowitz* case, *supra*, as follows:

* * * Thus, our consideration is limited to defendant's contention that the words in paragraph 1519 (b), *supra*, "including plates, mats, linings, strips, and crosses" are words of extension, which, as stated in Government counsel's brief, "extend the scope of that paragraph to include lambskin plates whether or not they be dressed." In support thereof, defendant cites the case of *Carlowitz* v. *United States*, 2 Ct. Cust. Appls. 172, T. D. 31681, which arose under the Tariff Act of 1909 and involved judicial interpretation of the provision in paragraph 439 of said act for "manufactures of furs, further advanced than dressing

and dyeing, when prepared for use as material, including plates, linings, and crosses." The merchandise under consideration in the said *Carlowitz* case consisted of fur skins sewn into the form of crosses and linings. All of the skins were dressed; some of them were also dyed. The court found from the testimony and the samples that "much time and labor has been devoted to the matching and cutting of the different pieces making up these importations," which resulted in "perfectly matched and selected crosses and linings." It was also shown by the record, as stated by the appellate court, that the merchandise was "prepared for the use of the furrier and other manufacturers of furs."

The court, in the *A. S. Gold & Bro., Inc.*, case, pointed out that the lambskin plates there involved were materially different from the crosses and linings of dressed skins involved in the *Carlowitz* case, *supra*, and, in holding the involved merchandise was not properly dutiable under paragraph 1519 (b) of the Tariff Act of 1930 as "Manufactures of fur," stated, *inter alia*, at page 128:

* * * Furthermore, the plates were made up of *undressed* lambskins, a condition which excludes classification under said paragraph 1519 (b), as it specifically provides that the merchandise classifiable thereunder shall be "further advanced than dressing." [Italics quoted.]

So, too, in the case at bar, the involved plates of undressed skins are excluded from the provisions of paragraph 1519 (b) of the tariff act, *supra*.

We are unable to see any reason for holding, because these parts of skins, consisting of the heads, legs, and ears, are assembled into plates separately from the skins from which the said legs, heads, and ears have been removed, that the said plates made up from the parts thus severed constitute different merchandise, in the tariff sense, from plates, composed of that portion of the skins remaining after the removal of the legs, ears, and heads.

The Government also cites the following cases: *Caracul Fur Co. (Inc.) et al.* v. *United States*, 55 Treas. Dec. 769, T. D. 43390, affirmed in *Caracul Fur Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 262, T. D. 43687, and *United States* v. *Richter*, 2 Ct. Cust. Appls. 167, T. D. 31680. However, these cases are also clearly distinguishable from the cases now under consideration and from the line of cases culminating in the *Kung Chen* and *A. S. Gold & Bro., Inc.*, cases, *supra*. In the *Richter* case, the merchandise consisted of "certain dressed sheepskins, sewed into rectangular shapes, 64 inches long by 30 inches wide," which were classified at the rate of 35 per centum ad valorem under paragraph 439 of the Tariff Act of 1909 as "manufactures of furs, further advanced than dressing and dyeing." The importer claimed the goods properly dutiable at 20 per centum ad

valorem under the same paragraph of the act, either as furs, dressed on the skin, not repaired, and not advanced further than dyeing, or as partly manufactured articles, not provided for under paragraph 480 of the pertinent act.

It will be observed that the sheepskins there under consideration were admittedly dressed and that the questions involved were entirely different from those now under consideration and from those dealt with in the *Kung Chen* and *A. S. Gold & Bro., Inc.*, cases, *supra*.

In the *Caracul Fur Co.* case, *supra*, the merchandise there involved consisted of so-called "lamb-leg crosses." The court there stated that the issue turned on "the answer to plaintiffs' contention that these lamb-leg crosses are not manufactures of fur, but manufactures of waste, and that since there is no provision in the existing tariff act for manufactures of waste the collector should have classified them as unenumerated manufactured articles." The same issues are not presented in the case now before us.

We are of the opinion and hold that the case now under consideration is controlled by the rulings of the court in the cases of *Kung Chen Fur Corp.* v. *United States*, 24 Cust. Ct. 24, C. D. 1203 (affirmed in C. A. D. 447, *supra*); *Kung Chen Fur Corpn.* v. *United States*, 29 Cust. Ct. 266, C. D. 1480; and *A. S. Gold & Bro., Inc.* v. *United States*, 33 Cust. Ct. 120, C. D. 1643, and that the merchandise at bar is properly classifiable under the provisions of paragraph 1681 of the Tariff Act of 1930 as "Furs and fur skins, not specially provided for, undressed," and should be admitted duty free.

The protests are, therefore, sustained. Judgment will be entered accordingly.

### DISSENTING OPINION

MOLLISON, Judge: I regret that I am unable to agree with my colleagues of the majority in their conclusion in this case. In dissenting opinions filed by me in the cases of *Kung Chen Fur Corpn.* v. *United States*, 29 Cust. Ct. 266, 270, C. D. 1480, and *A. S. Gold & Bro., Inc.* v. *United States*, 33 Cust. Ct. 120, 128, C. D. 1643, to which attention is invited, I expressed the view that both legislatively and judicially plates of fur have been consistently distinguished and treated separately from other classes of furs and fur skins.

The facts in the case at bar, it seems to me, bring this distinction into sharper focus, inasmuch as it is stipulated that, in the manufacture of fur garments or other fur articles from the plates here involved, the pieces of which the plates are composed are not separated from each other. To my mind, this indicates clearly the status of the

imported plates is as a fur material, something further advanced than the raw or undressed pelt (which I conceive to be the scope of the provision in paragraph 1681) but not yet made into a fur article classifiable under paragraph 1519.

I agree that the fact that, as imported, the plates are not dressed bars them from classification under paragraph 1519 (a) or (b), and, inasmuch as, in their imported state, they are obviously not dedicated to the manufacture of any particular article or class of articles, they have not reached the state of being fur articles, even partly manufactured, classifiable under paragraph 1519 (d) or (e).

I am, therefore, of the opinion that proper classification would be under the nonenumerated manufactured articles provision in paragraph 1558.